ORDERED.

**Dated:  March 29, 2022**

_Caryl E. Delano_

Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 2:20-bk-03062-FMD
                                                          Chapter 7

Kimberlee R. Everson,

        Debtor.
_____/

Kimberlee R. Everson,

        Plaintiff,
vs.                                                       Adv. Pro. No. 2:20-ap-267-FMD

U.S. Department of Education,

        Defendant.
_____/

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND MEMORANDUM OPINION**

THIS PROCEEDING came before the Court on August 3, 2021, and

September 15, 2021, for trial of the *Complaint to Determine Dischargeability Under Title*

*11 U.S.C. 523(8)* (the "Complaint")[1] filed by Kimberlee R. Everson ("Debtor"). In the

Complaint, Debtor seeks a determination that her student loan is dischargeable in her

bankruptcy case on the grounds that repayment of the loan would impose an undue

hardship on her and her dependent son. After carefully considering the evidence, the

Court concludes that Debtor did not meet her burden to prove the dischargeability of

her student loan debt, and under 11 U.S.C. § 523(a)(8), the student loan is excepted

from Debtor's discharge.

I.      FACTS

Debtor is an unmarried woman with a teenage son. She previously lived in

Wisconsin and attended Bryant and Stratton College as a full-time student from June

2006 to April 2008. To pay for her education, Debtor obtained loans from the U.S.

Department of Education ("DOE") and later signed a promissory note to consolidate

the loans (the "Loan").[2] In 2008, Debtor graduated from the college with an associate

in science degree in medical assisting.[3]

---

[1] Doc. No. 1.
[2] Doc. No. 32-7.
[3] Doc. No. 32-5, p. 12.

### A.    Debtor's Post-Graduate Employment in Wisconsin

Between 2008 and 2014, after obtaining her degree, Debtor was employed as a medical assistant in a series of jobs in Wisconsin and earned between $12.50 and $14.00 per hour.[4]

From 2014 to 2019, Debtor was employed as a medical assistant by several different medical facilities in Wisconsin, at which she earned between $14.25 and $23.00 per hour.[5]

While she lived in Wisconsin, Debtor met Anthony Guehlstorf, a family friend, and for a period time resided with her son in a basement apartment at Mr. Guehlstorf's home.

### B.    Debtor's Relocation to Florida

In early 2019, Debtor and her son moved to Florida. Debtor testified that Mr. Guehlstorf had previously moved to Florida, and she followed because she "had nowhere else to go, and [] didn't have a job."[6] The Court notes there is no evidence that Debtor's relationship with Mr. Guehlstorf is anything other than friendship.

---

[4] Doc. No. 32-5, p. 6.
[5] Doc. No. 32-5, pp. 6-7.
[6] Doc. No. 37-1, pp. 33-34.

In February 2019, Debtor and Mr. Guehlstorf signed a rental agreement, under which Debtor leases a portion of Mr. Guehlstorf's home in Cape Coral, Florida, for $600.00 per month.[7]

After she moved to Florida, Debtor worked for short periods as a medical assistant at two companies;[8] she testified that she injured her knee while she was employed at one of the companies. And in May 2020, just one month after Debtor filed the Complaint, she obtained a full-time job as a medical support assistant at the Department of Veterans Affairs ("VA").[9]

### C.    Debtor's Participation in Student Loan Repayment Programs

Between 2014 and 2019, based on partial financial hardship, Debtor periodically participated in the DOE's income-driven repayment plans.[10] The evidence at trial is that between April and October 2019, Debtor made seven payments of $32.27, and that since 2014, she has made $819.32 in total payments on the Loan.[11] Debtor did not make any payments on the Loan after October 2019, and since she moved to Florida in early 2019, she has not applied to participate in any DOE student loan repayment programs.[12]

---

[7] Doc. No. 32-4.
[8] Doc. No. 32-5, pp. 7-8.
[9] Doc. No. 32-5, p. 8.
[10] Doc. No. 32-8; Doc. No. 37-1, p. 24.
[11] Doc. No. 32-8, Doc. No. 32-7, p. 8.
[12] Doc. No. 32-8, p. 6; Doc. No. 37-1, pp. 23-24.

As of April 14, 2020, the principal balance due on the Loan was $43,035.98, with accrued interest of $2,836.85, and a total balance due of $45,872.83.[13]

### D.   Debtor's Bankruptcy Case

On April 14, 2020, Debtor filed a Chapter 7 bankruptcy petition. On her bankruptcy schedules,[14] Debtor listed her assets including a 2013 Ford Fusion, which Debtor valued at $7,825.00 and which is subject to a loan from Capital One.[15] During the bankruptcy case, Debtor reaffirmed the $4,827.58 debt she owed to Capital One and agreed to pay $311.62 per month for 17 months to pay off the loan.[16] Debtor listed two other debts on her schedule of liabilities:  the DOE Loan and a $702.00 credit card debt to US Bank.[17]

On April 23, 2020, Debtor filed the Complaint seeking the Court's determination that her obligation to the DOE is not excepted from her Chapter 7 discharge. In the Complaint, Debtor alleged that she had not worked since March 2020, that her expenses exceeded her income, and that her financial situation was unlikely to improve, in part because she would be unable to move into a higher pay grade as a medical assistant.[18] Therefore, Debtor alleged that repayment of the Loan

---

[13] Doc. No. 32-7.
[14] Main Case, Doc. No. 1, p. 16.
[15] Main Case, Doc. No. 1, pp. 9, 21.
[16] Main Case, Doc. No. 10.
[17] Main Case, Doc. 1, pp. 23, 29.
[18] Doc. No. 1, ¶ 9.

would cause undue hardship to her and her son, and requested an order determining that the debt is dischargeable under 11 U.S.C. § 523(a)(8).

### E. Debtor's Current Income and Expenses

Debtor's 2020 U.S. Individual Income Tax Return, which includes her VA income for seven months of the 2020 calendar year, reflects adjusted gross income (wages and salary) of $31,648.00.[19]

Debtor's VA pay statement dated May 28, 2021, reflects a pay rate of $19.46 per hour, annual "adjusted basic pay" of $40,621.00, and gross pay of $1,556.80 for the bi-weekly pay period ending May 22, 2021. From Debtor's bi-weekly gross pay, amounts were deducted for tax withholding, health insurance premiums, contributions to the federal employment retirement system ($68.50), and contributions to a thrift savings plan account ($77.84). After the deductions, Debtor's net pay for the bi-weekly period was $1,080.34,[20] or approximately $2,160.68 per month. In addition, Debtor's son (whose father is deceased) receives $318.00 per month from Social Security as a surviving child benefit.[21]

At the time of trial, Debtor's total monthly income, including her son's Social Security benefit, was $2,478.68.

---

[19] Doc. No. 34-8, p. 5.

[20] Doc. No. 33-1, p. 29. The federal government's Thrift Savings Plan is similar to a 401(k) retirement account.

[21] Doc. No. 32-5, p. 8.

Debtor testified that her average monthly expenses consist of the following:[22]

| | |
|---|---|
| Rent | $ 600.00 |
| Electricity | $ 100.00 |
| Telephone and cable services | $ 100.00 |
| Car payment | $ 311.62 |
| Car insurance | $ 103.00 |
| Food | $ 550.00 |
| Medication | $  50.00 |
| Clothing | $  50.00 |
| Transportation expenses | $ 275.00 |
| Personal care | $  50.00 |
| Miscellaneous expenses | $ 300.00 |
| Total monthly expenses | $2,489.62. |

Subtracting this total from Debtor's total monthly income indicates that Debtor has a monthly cash deficit of about $11.00.

Although Debtor's expenses may include amounts related to her physical and mental health,[23] other than her testimony, the record does not include any evidence of her physical or mental health conditions or related expenses.

And Debtor's actual expenditures are more accurately reflected in her bank records. For example, these records reflect that for the month ending September 15, 2020, Debtor spent more than $250.00 dining in restaurants, including single outings where she spent between $50.00 and $80.00.[24] And the bank statement ending on

---

[22] Doc. No. 32-5, p. 16; Doc. No. 37-1, pp. 38-42.
[23] For example, Debtor testified that she is still troubled by her 2019 knee injury, although the VA has accommodated the injury by providing a sit-and-stand desk (Doc. No. 37-1, p. 11). Debtor also testified that she suffers from a number of permanent emotional disabilities, including anxiety, depression, bipolar and mood disorders, panic attacks, and ADHD, for which she receives "on and off" treatment (Doc. No. 32-5, p. 10; Doc. No. 37-1, pp. 19-21).
[24] Doc. No. 32-2, pp. 14-15; Doc. No. 37-1, pp. 56-59.

October 15, 2020, reflects an ATM withdrawal and dining expenditures in Key West, Florida, totaling $225.00.[25] In addition, Debtor's bank records reflect monthly payments for a gym membership beginning in September 2020, and regular purchases at a liquor store.[26] Between December 15, 2020, and March 12, 2021, Debtor spent more than $440.00 at liquor stores.[27] And Debtor offered no explanation for cash and ATM withdrawals—for example, over $480.00 between November 17, 2020 and December 14, 2020—saying only that she used the cash for "living."[28]

### F.    Mr. Guehlstorf's Financial Assistance to Debtor

Mr. Guehlstorf provides an unquantified amount of financial assistance to Debtor. Debtor testified that he does not collect rent when she cannot pay it, and that Mr. Guehlstorf pays other living expenses, such as the electric bill and car expenses when she cannot pay them.[29] In addition to assisting Debtor with her regular living expenses, Mr. Guehlstorf also paid the attorney's fees for Debtor's bankruptcy filing, Debtor's airfare to Wisconsin when Debtor's mother was ill,[30] and hotel and related costs for an October 2020 trip to the Florida Keys for Mr. Guehlstorf, Debtor, and Debtor's son.[31]

---

[25] Doc. No. 32-2, p. 20.
[26] *See, e.g.,* Doc. No. 32-2, pp. 19, 22, 26.
[27] Doc. No. 32-2, pp. 33-42.
[28] Doc. No. 32-2, pp. 30-31; Doc. No. 37-1, pp. 43-44.
[29] Doc. No. 37-1, pp. 35, 61-62.
[30] Doc. No. 37-1, pp. 35, 59-62.
[31] Doc. No. 32-2, p. 20; Doc. No. 37-1, pp. 60-61.

Debtor testified that amounts that Mr. Guehlstorf has paid on her behalf are loans that she attempts to repay when she can, but she did not produce any evidence to show an accounting of the amount owed or that Mr. Guehlstorf requires such an accounting.[32]

And in the six weeks before she filed her bankruptcy case, Debtor made three payments to Mr. Guehlstorf of $1,500.00 each, for total payments of $4,500.00.[33] Debtor testified that the funds to make the payments likely came from her tax refund, and that the payments were intended to repay Mr. Guehlstorf for everything he helped her with.[34]

## G.    Debtor's Eligibility for Student Loan Repayment Plans

Philippe Guillion, a senior analyst with the DOE, testified at trial that Debtor is currently eligible for several student loan repayment plans. For example, as an employee of the VA, she qualifies for the Public Service Loan Forgiveness Program, under which the Loan may be forgiven after ten years of consecutive or non-consecutive public service—and any amount forgiven is not taxed as income. In addition, Debtor is eligible for the type of income-based repayment plan that she

---

[32] Doc. No. 37-1, pp. 35-36, 45-46, 52-53.

[33] The payments were made on February 29, 2020, March 1, 2020, and March 4, 2020 (Doc. No. 37-1, pp. 50-51).

[34] Doc. No. 37-1, pp. 51, 55.

previously participated in, as well as a plan that would be more beneficial to her, the Revised Pay-As-You Earn Repayment (the "REPAYE Plan").

Mr. Guillion testified that he reviewed Debtor's adjusted gross income, filing status, and number of exemptions claimed in her 2020 federal income tax return, and determined that her Loan payment under the REPAYE Plan would be $48.00 per month. Finally, Mr. Guillion testified that the amount owed would be reduced if Debtor's income decreases in the future, and that DOE repayment plans can be combined, so that Debtor could participate in both the REPAYE Plan and the Public Service Loan Forgiveness Program at the same time.

## II.   ANALYSIS

Generally, under 11 U.S.C. § 523(a)(8),[35] student loans are not discharged in a bankruptcy case. But a "narrow exception" to the general rule exists if excepting the debt from discharge "would impose an undue hardship on the debtor and the debtor's dependents."[36] The Eleventh Circuit Court of Appeals has adopted what is known as the "*Brunner* test" to determine whether a debtor has established undue hardship under § 523(a)(8).[37]

---

[35] Unless otherwise stated, statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[36] 11 U.S.C. § 523(a)(8).

[37] *In re Graddy*, 852 F. App'x 509, 512 (11th Cir. 2021) (citing *In re Cox*, 338 F.3d 1238, 1241-42 (11th Cir. 2003), and *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987)).

Under the *Brunner* test, a debtor seeking to discharge a student loan debt must

show, by a preponderance of the evidence, three elements:

> (1) that the debtor cannot maintain, based on current income and
> expenses, a "minimal" standard of living for herself and her dependents
> if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs
> is likely to persist for a significant portion of the repayment period of the
> student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

The *Brunner* test "calls for the Court to look at [the debtor's] situation at the

time of trial, as well as consider likely future events which would impinge upon her

ability to repay her student loans."[38]

In *In re Acosta-Conniff*,[39] the debtor, a 44-year-old mother of two teenagers, was

a tenured high school teacher. Despite the debtor's modest lifestyle, her income and

expenses left a deficit of more than $200.00 per month. And the debtor suffered from

morbid obesity and Type II diabetes, making it unlikely that her income and financial

circumstances would improve during the term of the loans. Nevertheless, the debtor

had managed to repay more than $9,000.00 of her student loan balance, and she had

participated in loan deferment or forbearance programs for most of the six years

before the bankruptcy case. Under these facts, the court concluded that the debtor

---

[38] *In re Acosta-Conniff*, 632 B.R. 322, 329 (Bankr. M.D. Ala. 2021).
[39] 632 B.R. 322 (Bankr. M.D. Ala.).

was entitled to a discharge of her student loans under § 523(a)(8) because she would not be able to sustain a minimal standard of living if she repaid the loans, her situation was likely to persist, and she had acted in good faith.

### A.    Minimal Standard of Living

Under the first prong of the *Brunner* test, a central issue is whether the debtor's current expenses could be reduced, under a common-sense approach, while still allowing the debtor to maintain a minimal standard of living.[40] A "minimal standard of living" may be defined as a "measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities."[41] To satisfy the test, the debtor is not required to live in poverty, "but she is also not entitled to maintain a previous standard of living."[42] In evaluating the debtor's standard of living, courts consider the total household income and expenses.[43]

Here, the evidence is that Debtor maintains a relatively minimal standard of living. She rents only a portion of a home for which she pays a modest amount of rent to Mr. Guehlstorf. And were it not for Mr. Guehlstorf's willingness to defer rent and

---

[40] *In re Harvey*, 2020 WL 4000869, at *3 (Bankr. N.D. Fla. Mar. 24, 2020).

[41] *In re Acosta-Conniff*, 632 B.R. at 340 (citations omitted).

[42] *In re Matthews-Hamad*, 377 B.R. 415, 421 (Bankr. M.D. Fla. 2007) (quoting *In re Stanley*, 300 B.R. 813, 817-18 (N.D. Fla. 2003)).

[43] *In re Harvey*, 2020 WL 4000869, at *3 (citations omitted).

provide financial assistance, Debtor would likely have far more costly housing and utility expenses.

Although the record reflects that Debtor's spending includes discretionary items, such as restaurant meals, expenses in Key West, and liquor purchases, Debtor would not have been able to pay for those items without Mr. Guehlstorf's financial assistance. And the Court takes judicial notice of the significant COVID-19 stimulus payments paid to single persons with annual income of less than $75,000.00 per year for which Debtor would have been eligible,[44] and which likely provided additional disposable income to Debtor during 2020.

The Court concludes that Debtor met her burden of proof on the first prong of the *Brunner* test.

### B.      Likelihood that Debtor's Financial Condition Will Continue

Under the second prong of the *Brunner* test, a debtor must show that the existing financial situation is likely to be prolonged by factors outside the debtor's control.[45] In evaluating this prong, courts "consider factors such as 'the debtor's age, age of the debtor's dependents, debtor's education, work and income history, physical and mental health, and other relevant circumstances.'"[46]

---

[44] The Coronavirus Aid, Relief, and Economic Security (CARES) Act of March 27, 2020.
[45] *In re Harvey*, 2020 WL 4000869, at *6.
[46] *In re Acosta-Conniff*, 2021 WL 4485684, at *15 (citations omitted).

Here, there is no record evidence of Debtor's age. Debtor's son, who was 15 years old when she filed the Complaint,[47] almost two years ago, may no longer be eligible for Social Security benefits when he turns 18. Although the Court accepts Debtor's testimony regarding her physical and mental health conditions, the evidence does not show that Debtor has disabilities that prevent her from holding a job or earning a livable wage.

The Court gives substantial weight to Debtor's current, apparently stable employment with the VA, where her annual "adjusted basic pay" increased from $38,921.00 when she was first employed in May 2020, to $40,621.00 one year later in June 2021.[48] And Debtor has provided no evidence that her future income at the VA is limited for any reason.

However, the Court recognizes that Debtor's income includes her son's current Social Security benefits, and her expenses reflect the relatively low rent she pays to Mr. Guehlstorf. Based on the record evidence, the Court concludes that Debtor's financial circumstances are unlikely to improve significantly, and that Debtor has met her burden of proof on the second prong of the *Brunner* test.

---

[47] Main Case, Doc. No. 1, ¶ 8.
[48] Doc. No. 33-1, pp. 2, 30.

C.    **Debtor's Actual Efforts to Repay Student Loans**

Under the third prong of the *Brunner* test, the court focuses on the debtor's

efforts to maximize income and minimize expenses, as well as on the debtor's actual

efforts to repay the student loan.[49] And courts consider the debtor's past conduct to

determine whether her actions show a good faith effort to repay the student loans.[50]

Here, the evidence is that Debtor has made a minimal effort to repay the Loan.

In fact, since 2014—over seven years ago—Debtor has made only $819.02 in payments

on the Loan. Debtor testified that she stopped participating in any DOE repayment

program after moving to Florida and had not considered reapplying to any of the

DOE programs after obtaining full-time employment with the VA.[51] And the record

reflects that when she has additional available funds, she uses them for discretionary

purchases rather than making payments on the Loan.

Based on the record evidence, the Court concludes that Debtor has not met her

burden of proof on the third prong of the *Brunner* test.

III.   **CONCLUSION**

Because Debtor failed to prove each of the elements of the *Brunner* test by a

preponderance of the evidence, the Court finds that Debtor has not met burden of

proof to show that repayment of the Loan would impose an undue hardship on her

---

[49] *In re Harvey*, 2020 WL 4000869. at *7.
[50] *In re Acosta-Conniff*, 632 B.R. at 346.
[51] Doc. No. 37-1, pp. 24-25.

or her son. Therefore, the Loan is excepted from Debtor's discharge under 11 U.S.C. § 523(a)(8).

Accordingly, it is

**ORDERED:**

1.    The debt owed by Debtor, Kimberlee R. Everson, to Defendant, the U.S. Department of Education, is excepted from Debtor's discharge under 11 U.S.C. § 523(a)(8).

2.    A separate final judgment will be entered in this proceeding in favor of Defendant, the U.S. Department of Education, and against Debtor, Kimberlee R. Everson.

Clerk's office to serve on interested parties via CM/ECF.